NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0407n.06

Case No. 23-1010

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
October 17, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff - Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| TOMMY MAURICE-SANS JURL, | ) | |
|     Defendant - Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: BOGGS, MOORE, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Tommy Maurice-Sans Jurl robbed several credit unions and cash advance businesses in southwestern Michigan. After pleading guilty, Jurl testified against his partner, Redo Rolling, at Rolling's trial. Recognizing Jurl's substantial assistance in Rolling's prosecution, the district court sentenced Jurl to seventy-two months' imprisonment — thirty-eight months below the bottom of his initial Guideline range. Nevertheless, Jurl now seeks to vacate his sentence, arguing that his trial counsel performed deficiently by failing to more vigorously contest his purportedly overstated criminal history score. Because we find that Jurl's trial counsel rendered adequate representation, and because Jurl was not prejudiced even if she did not, we affirm.

I.

Between June 2020 and December 2021, Jurl robbed or attempted to rob six credit unions and cash advance businesses across southwestern Michigan. Many of these robberies followed a common pattern. Jurl would enter the target business alone, demand money and threaten the

employees with the prospect of accomplices waiting outside. Money in hand, Jurl would then leave with his co-defendant, Redo Rolling, who was driving the getaway vehicle. Through the first five robberies, Jurl and Rolling purportedly obtained more than $36,000. But on their sixth attempt, their luck ran out, and officers arrested Jurl and Rolling as they fled from the Instant Cash Advance store in Wyoming, Michigan, after the store's employee denied them cash and instead called the police.

A grand jury indicted Jurl on six counts related to these robberies. Ultimately, however, Jurl pled guilty to just one count of credit union robbery. The government dismissed the remaining five counts. By virtue of his plea agreement, Jurl waived certain avenues for appeal, including, for instance, his right to appeal the district court's calculation of the Sentencing Guidelines range (absent an objection by defense counsel at sentencing). But Jurl maintained the right to raise certain constitutional challenges, such as ineffective assistance of counsel. The district court accepted Jurl's plea agreement as knowingly and voluntarily made.

At sentencing, the district court began by ensuring that the parties had no outstanding objections to the presentence report. The court then turned to Jurl and confirmed that he had reviewed the presentence report and was otherwise satisfied with his representation. Jurl responded in the affirmative, noting his "complete[]" satisfaction with defense counsel. DE 121, Sentencing Tr., Page ID 727. Next, the court addressed the offense level calculation. Although Jurl pled guilty only to one count of credit union robbery, he stipulated to the facts underlying the other five counts, which were incorporated into the calculation of his offense level and restitution amount. All agreed that this resulted in a total offense level of twenty-five. Likewise, all agreed that Jurl had a criminal history score of twenty, placing him in Criminal History Category VI. These figures generated a Guidelines range of 110–137 months' imprisonment.

The government then moved for a downward departure, seeking a six-level reduction in Jurl's total offense level — consistent with U.S.S.G. § 5K1.1 — for Jurl's assistance in the government's prosecution of Rolling. The court granted this motion and reduced Jurl's total offense level to nineteen, which in turn produced an amended Guidelines range of 63–78 months.

Defense counsel spoke next, addressing Jurl's sentencing memorandum and motion for a downward variance. She focused on Jurl's lengthy criminal history, which counsel argued overstated the seriousness of Jurl's offenses and his likelihood of recidivism. She highlighted that, despite Jurl's high criminal history category, his past offenses were primarily "petty nonviolent offenses." DE 121, Sentencing Tr., Page ID 730. And she argued that the difficulties Jurl endured after entering the adult prison population at age fifteen — severe mental health issues, poverty, and homelessness — contributed to his repeated incarceration over the years. These challenges, she continued, explained Jurl's previous lack of success in custody and on parole. But as evidenced by his post-arrest conduct in this case, she concluded, Jurl's previous convictions no longer reflected his character or ability to succeed after incarceration.

In response, the government largely agreed with defense counsel's characterization of Jurl's growth. The government described Jurl as respectful and increasingly "stable" as he became sober throughout his cooperation in Rolling's trial. *Id.* at Page ID 734. Jurl struck the government as "somebody who has improved himself through this process." *Id.*

Finally, Jurl spoke about his "commitment to change and redirect[ion]" through federal programming and his renewed commitment to his family. *Id.* at Page ID 734–36. The district court expressed skepticism, however, and highlighted Jurl's longstanding involvement in the criminal justice system. The court noted that he had "been given a lot of chances," and that it would be up to him to take advantage of future opportunities. *Id.* at Page ID 736. Similarly, the

court reminded Jurl that given his high offense level, he would have faced a decade in prison had he not cooperated with the government and earned a downward departure.

Turning to the § 3553(a) factors, the court highlighted the "serious" nature of Jurl's string of robberies, focusing on the "significant period of time" that Jurl participated in this scheme. *Id.* at Page ID 740. The court then acknowledged Jurl's tumultuous upbringing and its contribution to his severe mental health issues and subsequent incarceration. Jurl's criminal history, the court intimated, was a double-edged sword. On one hand, Jurl lacked a "significant violent history." *Id.* at Page ID 741. But on the other hand, the persistence of primarily petty offenses and parole violations "just never stopped," rendering the court skeptical that Jurl would perform well under supervision. *Id.* at Page ID 741–42. Still, the court commended Jurl's recent improvements.

Taking all of this together, the court found that a sentence within the adjusted Guidelines range of 63-78 months was warranted. Accordingly, the court sentenced Jurl to seventy-two months' imprisonment followed by three years of supervised release, and it ordered restitution totaling $36,266. Neither party objected. Jurl appeals, urging this court to vacate his sentence and remand for resentencing.

## II.

To successfully bring a Sixth Amendment ineffective assistance of counsel claim, Jurl must show that his counsel's conduct fell below "an objective standard of reasonableness" and that a "reasonable probability" exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). These two requirements are commonly known as the performance and prejudice prongs, respectively. *See, e.g.*, *Andrus v. Texas*, 590 U.S. —, 140 S. Ct. 1875, 1886 (2020) (per curiam). Jurl's failure to satisfy either prong results in the failure of his claim. *Strickland*, 466 U.S. at 697

(counseling that a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one").

Typically, ineffective assistance of counsel claims are inappropriate for review on direct appeal "since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. McAllister*, 693 F.3d 572, 586 (6th Cir. 2012) (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005)). Claims brought in a post-conviction proceeding pursuant to 28 U.S.C. § 2255, in contrast, allow a district court to make appropriate factual findings in the first instance. *Id.* We may make an exception, however, "in the rare case in which the record is adequate to review the claim on direct appeal." *United States v. Gilbert*, 838 F. App'x 181, 183 (6th Cir. 2021) (citing *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998)). Both Jurl and the government agree that the record is adequate here. Because Jurl's ineffective assistance claim solely concerns his counsel's performance at his sentencing hearing, we agree that the record enables us to resolve this claim.

III.

Jurl contends that his counsel performed deficiently at his sentencing in two ways. First, defense counsel "failed to meaningfully explain to the court" that the inclusion of two petty offenses in Jurl's criminal history score, one of which was a juvenile offense, overstated the extensiveness of Jurl's criminal history. CA6 R. 22, Appellant Br., at 8, 15. Second, defense counsel failed to object to the inclusion of a stale, three-point offense into Jurl's criminal history calculation. Neither argument is meritorious.

Jurl's first argument fails because he cannot show that his counsel acted deficiently by failing to argue that the inclusion of a three-point larceny conviction and one-point alcohol conviction overstated the seriousness of Jurl's criminal history. At the outset, Jurl concedes that

these charges were "calculated correctly" in Jurl's criminal history score computation. CA6 R. 22, Appellant Br., at 15. Thus, "it was not unreasonable for [Jurl]'s counsel to fail to object to [Jurl]'s criminal history classification" on this basis. *United States v. Nicholson*, 253 F. App'x 515, 521 (6th Cir. 2007) (finding lack of deficient performance because criminal history score was properly computed); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Moreover, Jurl's counsel *did* advance Jurl's desired argument at sentencing. Counsel argued for a downward variance based, in part, on the fact that Jurl's criminal history was inflated by Jurl's petty offenses. *See* DE 91, Sentencing Mem., Page ID 551 (defense counsel describing Jurl's history as "primarily involv[ing] incidents of public intoxication, petty theft, and driving offenses"). She then reiterated this argument at Jurl's sentencing hearing. The district court acknowledged as much, noting that Jurl's history was mainly nonviolent, but it ultimately found that the seriousness of Jurl's robberies, his lengthy criminal history and his poor performance under supervision rendered a downward variance inappropriate. Counsel did not act deficiently in failing to change the court's mind. *See United States v. Walton*, 42 F. App'x 734, 734–35 (6th Cir. 2002) (rejecting claim where "counsel did argue to the sentencing court that Walton's criminal history score over-represented his criminal past," making the court "aware of the sentencing factors that Walton raises on appeal"); *Nicholson*, 253 F. App'x at 521 (acknowledging that "counsel did request a downward departure" which the district court clearly found unwarranted in light of criminal history). Accordingly, Jurl cannot overcome *Strickland*'s "strong presumption" that his attorney's conduct fell within the realm of reasonableness. 466 U.S. at 689.

Jurl's second argument concerns the district court's computation of his criminal history score pursuant to U.S.S.G. § 4A1.1. At fifteen, Jurl was tried as an adult and convicted of receiving

stolen property. He was then sentenced to between eighteen months and five years' imprisonment. Jurl does not challenge the inclusion of this conviction based on his juvenile status.[1] Instead, he argues that the conviction was too old to be included given the conviction's vintage (1991), the maximum sentence (five years), and the end date of § 4A1.2(e)(1)'s fifteen-year lookback period (June 2005) for inclusion of prior convictions in a defendant's criminal history calculation. The government compellingly rebuts this argument, but we need not decide this issue to resolve Jurl's appeal; even if Jurl is correct, he cannot establish that he suffered any prejudice.

Pursuant to *Strickland*, Jurl must demonstrate a "reasonable probability" that he would have obtained a more favorable sentence if not for his counsel's failure to exclude the 1991 conviction from his criminal history score. 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* At bottom, Jurl must do more than show that the error "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, he must demonstrate a probability that his "sentence [wa]s increased" by counsel's deficient performance. *Glover v. United States*, 531 U.S. 198, 204 (2001).

Jurl cannot make this showing. True, this court has found Guidelines calculation errors prejudicial when they subjected the defendant to a higher Guidelines range than he would have faced absent the errors. *See McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (deeming the defendant "clearly prejudiced by his counsel's failure to raise" a plausible argument that would have reduced his Guidelines range from 140–175 months to either 120–150 months or 100–125 months). But we have consistently found, albeit in unpublished decisions, a lack of

---

[1] Such challenge would not otherwise be supported by the Guidelines or the record. Jurl's presentence report indicates that he was tried as an adult for both the 1991 receiving stolen goods and the 1993 larceny offenses. The Guidelines enable courts to factor juvenile offenses into the criminal history computation if the defendant was tried as an adult. *See* U.S.S.G. § 4A1.2(d)(1). And Jurl concedes that his 1993 larceny offense was calculated correctly even though he was a juvenile at the time.

reasonable probability of prejudice when the calculation errors did not affect the Guidelines range and the record did not otherwise suggest that the defendant would have obtained a lower sentence. *See United States v. Hibbard*, 999 F.2d 541 (6th Cir. 1993) (unpublished table decision) (per curiam) (finding that, because defendant's correct score subjected him to the same criminal history category, "his sentence would remain the same, and counsel's failure to object could not have altered the outcome"); *cf. Nicholson*, 253 F. App'x at 521 (finding no prejudice where criminal history category was "properly computed"); *Powell v. United States*, No. 20-1782, 2021 WL 613416, at *3 (6th Cir. Jan. 4, 2021) (order) (defendant's desired calculation "would not have resulted in a different guidelines range"); *McQueen v. United States*, No. 19-2427, 2020 WL 3052629, at *3 (6th Cir. Mar. 25, 2020) (order).

Jurl falls into this latter category. At sentencing, all agreed that Jurl possessed a criminal history score of twenty. This put him in Criminal History Category VI. Jurl argues that three points were incorrectly incorporated into that score for his 1991 conviction. Absent those three points, his criminal history score would have dropped down to seventeen. But even at seventeen, Jurl would have remained in Criminal History Category VI—the highest criminal history category. Accordingly, Jurl's Guidelines range would have remained the same even had the 1991 offense been excluded.

This conclusion remains even if we look beyond Jurl's concession that the other four points for his larceny and intoxication offenses were properly calculated and exclude those as well. That subtraction would put Jurl's criminal history score at thirteen—still within Category VI. *See* U.S.S.G. Ch. 5 Pt. A (Sentencing Table). Jurl presents no argument to the contrary. Because counsel's alleged errors would result in the same Guidelines range, and because there is no other

evidence in the record indicating that Jurl would have obtained a different outcome, Jurl fails to establish ineffective assistance of counsel.

IV.

We affirm the district court's judgment.