[Cite as *State v. Collins*, 2024-Ohio-5730.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                    Court of Appeals No.  L-23-1256

    Appellee                                Trial Court No. CRB-22-03852

v.

 Aaron Eugene Collins                        **DECISION AND JUDGMENT**

    Appellant                               Decided:  December 6, 2024

* * * * *

Rebecca Facey, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, P.J.**

{¶ 1} Appellant Aaron Eugene Collins appeals the judgment of the Toledo Municipal Court, convicting him following a jury trial of one count of aggravated menacing and one count of intimidation of a victim or witness in a criminal case.  For the reasons that follow, the trial court's judgment is affirmed.

## I. Factual Background and Procedural History

{¶ 2} On April 29, 2022, a criminal complaint was filed against Collins in case No. CRB-22-03852, charging him with one count of aggravated menacing in violation of R.C. 2903.21(A), a misdemeanor of the first degree, and one count of intimidation of a victim or witness in violation of R.C. 2921.04(A), a misdemeanor of the first degree.[1]

{¶ 3} The charges were filed on the same day of an incident that occurred on Beverly Street in the south part of Toledo, Ohio. Briefly, Collins was alleged to have followed, videotaped, and harassed a postal worker, K.K., while she was delivering the mail. Notably, K.K. was a witness in a separate case involving Collins's friend, D.H. The alleged harassment took place on D.H.'s street.

{¶ 4} During pretrial proceedings, counsel for Collins moved to dismiss the charge of intimidation of a victim or witness in case No. CRB-22-03852, arguing that the complaint failed to include the essential facts that constituted the offense. The trial court ultimately denied this motion.

---

[1] Also on that day, a second criminal complaint was filed in case No. CRB-22-03867, charging Collins with one count of obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the fourth degree, one count of resisting arrest in violation of R.C. 2921.33, a misdemeanor of the second degree, one count of failure to disclose information in violation of R.C. 2921.29, a misdemeanor of the fourth degree, and one count of disorderly conduct in violation of R.C. 2917.11(A)(2), a minor misdemeanor. The trial court consolidated the two cases. Ultimately, it dismissed the count of obstructing official business and granted a Crim.R. 29 motion as to the count of disorderly conduct. The jury then found Collins not guilty on the counts of resisting arrest and failure to disclose information. Since Collins was not convicted of any charge in case No. CRB-22-03867, it is not part of this appeal, and the discussion of facts will focus only on those pertinent to the charges in case No. CRB-22-03852.

2.

{¶ 5} Subsequently, on May 19, 2023, Collins filed a motion to compel discovery, arguing that he had not been provided with all the videos taken by K.K. on the date of the alleged incident. Collins admitted that he received some of the videos but claimed that there continues to be at least two that have not been turned over by the State, despite the State's assertion that "all videos have been provided." Simultaneously, Collins filed a related motion to dismiss the case pursuant to Crim.R. 48 based upon the State's failure to provide discovery of the videos in a reasonable and timely manner. He argued that the State's failures resulted in continuous delays of his case, which caused him to lose job opportunities and significantly affected his ability to defend himself against the charges.

{¶ 6} The trial court held a hearing on September 8, 2023, on Collins' motion to compel discovery and his motion to dismiss. At the hearing, K.K. testified that she took multiple recordings of Collins on April 29, 2022. She did not remember how many different videos she took, but she did remember recording Collins while he was in the back of the patrol car. According to K.K., all of her videos were sent to the prosecutor. Since that time, her phone broke, and the original videos are irretrievable.

{¶ 7} Collins argued that while he has received some videos, there are at least two, including the video of him in the back of the patrol car, that are missing. He did not contest that the State turned over all the videos that it had, but he asserted that it should have searched K.K.'s phone and acquired the videos at the time of the incident on April 29, 2022.

3.

**{¶ 8}** Following the hearing, the trial court found that the State had met its responsibility to turn over evidence in discovery. It noted that Collins' argument that the State should have done more to acquire additional evidence is a common argument for the defense on cross-examination in a trial, but it does not warrant sanctions for a discovery violation. Thus, the trial court denied Collins' motion to compel discovery and his related motion to dismiss.

**{¶ 9}** The matter then proceeded to a two-day jury trial.

**{¶ 10}** Nearly all the events of April 29, 2022, were recorded by K.K. and/or Collins. On that day, K.K. was delivering mail on her route on Beverly Street when she saw Collins parked down the street watching her. When K.K. went to the next block, Collins moved his vehicle and parked nearby. He got out of his car, walked towards K.K., and began video recording her. Collins was on the sidewalk about 20 feet away from K.K. who was delivering mail to the door of a house. K.K. recognized him from a prior encounter and online videos that he had done. In a confrontational and sarcastic way, K.K. told Collins that she saw him and he could continue recording her.

**{¶ 11}** K.K. testified that at that point she was scared and did not know what he was capable of doing. She expounded,

> I didn't know what could have happened. Simple fact, I'm a woman. I'm small. He's a man. He's a bigger man. And with someone just watching you, and then get out in the car (SIC) and coming straight towards you with the phone and not leaving you alone, it's very scary not knowing what can happen to you. I'm out there by myself. No one there to help protect me if needed.

4.

**{¶ 12}** K.K. told Collins that she did not want to speak with him, and she attempted to continue her route. Collins, however, followed her while recording her on his phone. K.K. returned to her postal van and called the police.

**{¶ 13}** In her 911 call, she explained that Collins was out there for D.H. because D.H. is not allowed to record her anymore due to a criminal case she has against him. Admitted into evidence was a criminal complaint from March 24, 2022, charging D.H. with disorderly conduct. It alleged,

> [D.H.] repeatedly follows the victim, United States Postal Employee [K.K.], yelling and following her demanding his mail. [D.H.] has a history of interrupting the mail carriers while on their mail route. [D.H.] went around island of Beverly to stop and confront [K.K.]. Then again followed her across Sherwood onto another part of Beverly, parking behind the postal truck and continuing to engage in unwanted conversation about his mail. The Postal Service has stopped all service to [D.H.]'s property because of his continued harassment.

**{¶ 14}** At the trial, Collins denied that he was video recording K.K. on behalf of D.H. He did admit that he had developed a relationship with D.H. but claimed that he was on location to capture some footage regarding street repairs. Despite his denial, when he started live-streaming his video of K.K. in her postal van, he explained to his viewers that K.K. had called 911 and recorded D.H. during a dispute he was having with Toledo Edison, and she claimed that D.H. was bi-polar and has mental issues. Collins told his audience that "Today, I came out to record her and ask her a couple of questions because she likes to record her customers on her route." Additionally, Collins testified that he was unaware that there was a pending criminal case against D.H. involving K.K.,

5.

but text messages between him and D.H. show the two discussing the incidents and police responding to D.H.'s house on March 24, 2022.

{¶ 15} Toledo Police Officer Darnell Peters responded to the scene. He asked Collins if he had his identification on him, and Collins said "No, and I'm not giving it to you either." Collins claimed that he had the right to record anything he saw in public. He then stood on the sidewalk near the postal van and recorded K.K. speaking to Peters. He blurted out that no one else had anything to do with the situation, and if she said otherwise, it was slander. After speaking with K.K., Peters told Collins that he cannot follow K.K. while he was present, warning him that it was harassment. Collins yelled over Peters, talking about his right to video her and him both. Collins exclaimed that D.H. got in trouble because K.K. lied, and it was his job to record K.K.

{¶ 16} After the police encounter, K.K. pulled away in her van. Collins, while still live-streaming, continued to follow her on foot for several minutes. As he was walking, Collins noted that D.H. was across the street videotaping him. He nonetheless claimed on his own video that he was not recording K.K. for D.H., but was doing it for himself. Collins pursued K.K. across the street to a different block, and whenever he got close, she would pull further away from him. Eventually, K.K. turned a corner and Collins abandoned his endeavor, recognizing that it was Friday and he did not want to get arrested at the beginning of the weekend.

{¶ 17} Collins then spent several minutes examining the roads and talking about how work that was being done was causing issues with the electric lines and road

6.

conditions. After about five minutes, he noticed Peters drive by. He decided to approach Peters to obtain a call activity detail ("CAD") number so that he could later file a public records request. Peters did not stop, however, and drove across to the next block to where K.K. had parked her mail van. At that point, Collins was in front of D.H.'s house and had a conversation with him about whether Peters was going down to the mail van.

{¶ 18} During this time, from K.K.'s perspective, when Collins continued to follow her after he had been admonished by Peters, she felt unsafe and called 911 again. She testified multiple times that she was scared, did not feel safe, and could not get out of her van without him being there. Specifically, she affirmed that she was "scared that he was going to cause [her] serious physical harm."

{¶ 19} Upon seeing Peters again, Collins voiced on his recording that he had official business with him and approached him to obtain the CAD number while Peters was parked behind K.K.'s mail van. At that point, Peters arrested Collins. Prior to being placed in the back of the cruiser, Collins observed K.K. video recording him and yelled out "I will be getting that video, [K.K.]. I'll get that video." K.K. also testified that while he was in the back of the cruiser, Collins yelled at her "you f***ed up bitch." Neither Collins' video, nor the cruiser video shows Collins saying this to K.K.

{¶ 20} Following the presentation of the evidence, the jury found Collins guilty of aggravated menacing and intimidation of a victim or witness. At sentencing, the trial court ordered Collins to serve 180 days in jail, with 90 of those suspended, 30 of them in

7.

Corrections Center of Northwest Ohio or work release if eligible, and the remaining 60 days on house arrest. In addition, the court ordered five years of inactive probation.

## II. Assignments of Error

{¶ 21} Collins timely appeals his judgment of conviction, asserting two assignments of error for review:

> 1. The trial court abused its discretion when it denied Appellant's motion to compel discovery, and an associated motion to dismiss, because without it, appellant did not have the opportunity to present a complete defense.

> 2. The trial court abused its discretion when it denied Appellant's motion for acquittal pursuant to Crim.R. 29 based on insufficient evidence.

## III. Analysis

### A. Discovery Violation, Motion to Dismiss, and Due Process

{¶ 22} Collins' first assignment of error asserts that the trial court abused its discretion when it denied his motion to compel discovery of the video taken by K.K. of him in the back of the patrol cruiser and when it denied his motion to dismiss the charges based upon that alleged discovery violation.

{¶ 23} "A trial court has broad discretion over discovery matters," and a trial court's ruling on a claimed discovery violation under Crim.R. 16 is reviewed for an abuse of discretion. *State v. Harris*, 2023-Ohio-3994, ¶ 72 (10th Dist.), citing *State ex rel. Duncan v. Middlefield*, 2008-Ohio-6200, ¶ 27; *State v. Clark*, 2018-Ohio-521, ¶ 37 (6th

8.

Dist.).  An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶ 24} "Under Crim.R. 16(B), the state has a duty to provide the defendant with certain items related to the defendant's case that are 'within the possession of, or reasonably available to the state . . ..'" *Clark* at ¶ 38, quoting Crim.R. 16(B).  If the State fails to comply with this rule, the court may grant a continuance, prohibit the State from introducing in evidence the material not disclosed, or "make such other order as it deems just under the circumstances."  Crim.R. 16(L)(1).

{¶ 25} Despite framing his assignment of error as challenging the trial court's decision on his discovery motions, Collins argues in his brief that his due process rights were violated by the State's failure to turn over K.K.'s video of him in the back of the patrol cruiser.  "[E]ven in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt."  *State v. Geeslin*, 2007-Ohio-5239, ¶ 8, quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984).  "[T]he suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith."  *Id.* at ¶ 7, citing *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988).  If the evidence is only "potentially useful," however, the defendant's due process rights are violated only if he shows that the State acted in bad faith.  *Id.* at syllabus.

{¶ 26} In this case, the trial court did not abuse its discretion and Collins' due process rights were not violated for several reasons.  First and foremost, his statement to

9.

K.K. that "you f***ed up bitch" that he allegedly made while in the back of the patrol cruiser was not material to his conviction for aggravated menacing, despite it being mentioned in the criminal complaint. As will be discussed below, given the circumstances, Collins' conduct in following K.K. on foot after being admonished by Peters is sufficient by itself to support his conviction for aggravated menacing. Thus, K.K.'s video is not exculpatory.

{¶ 27} Second, even if it was exculpatory, any video taken by K.K. of Collins in the back of the patrol cruiser, if it existed, would be cumulative to his own live-streamed recording, Peters' body-worn camera video, and the patrol cruiser camera video, which collectively recorded all his conduct from before his arrest until his arrival at jail. Because none of the other video showed Collins making that statement to K.K., her video—which he alleges also would show that he did not make the statement—could not be materially exculpatory, only potentially useful. Collins, however, did not present any evidence that the State acted in bad faith in failing to turn over the video.

{¶ 28} Finally, the trial court's determination that the State did not commit a discovery violation was not an abuse of discretion. Although K.K. testified at the discovery hearing that she recorded Collins in the back of the patrol cruiser and that she turned over all her videos to the prosecutor, defense counsel did not allege that the State failed to turn over all the videos in its possession. Instead, defense counsel argued that the State should have done more to obtain the videos from K.K. Thus, where defense counsel does not contest that the State turned over all the evidence in its possession, the

10.

trial court's determination that the State did not commit a discovery violation is not unreasonable, arbitrary, or unconscionable.

{¶ 29} Accordingly, Collins' first assignment of error is not well-taken.

## B. Sufficiency and Manifest Weight

{¶ 30} In his second assignment of error, Collins argues that his convictions for aggravated menacing and intimidation of a witness are based on insufficient evidence. He also argues in his brief that his convictions are against the manifest weight of the evidence.

{¶ 31} "Insufficiency and manifest weight are distinct legal theories." *State v. Fenderson*, 2022-Ohio-1973, ¶ 73 (6th Dist.). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} In contrast, when reviewing a manifest weight claim,

> [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id.*, quoting *State v. Lang*, 2011-Ohio-4215, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

11.

{¶ 33} Collins was convicted of aggravated menacing and intimidation of a witness. Aggravated menacing is defined in R.C. 2903.21(A) as "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person . . .." "For the offense of aggravated menacing, '[i]t is sufficient to prove that the victim, in the moment, believed the defendant to be in earnest and capable of acting.' '. . . [A] person's belief that an offender will cause serious physical harm can be proven with circumstantial evidence.'" *State v. Robinson*, 2021-Ohio-2591, ¶ 5 (8th Dist.), quoting *Cleveland v. Garrett*, 2018-Ohio-4713, ¶ 19 (8th Dist.), quoting *Cleveland v. Reynolds*, 2018-Ohio-97, ¶ 6 (8th Dist.).

{¶ 34} In his brief, he focuses most of his attention on the statement that he allegedly made in the back of the patrol cruiser, which was included in the description of the offense in the criminal complaint, asserting that there is no evidence that he said those words to K.K. His argument is misplaced, however, because the actual evidence and testimony at trial establish his guilt without that statement. Indeed, the State did not rely on that statement in its closing argument to the jury.

{¶ 35} Here, Collins followed K.K. around the street while she was delivering the mail. K.K. returned to her mail van and called the police. When Peters arrived, he told Collins to stop recording her in his presence and told him that he was harassing her. Nonetheless, as soon as Peters left, Collins continued to follow K.K. up and down the street, recording her. He even pursued her to another block. At that point, K.K. testified that she was scared by Collins and afraid of what he could do. Further, Collins knew that

12.

K.K. was afraid because she had already called the police on him one time. Thus, viewing the evidence in a light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that Collins committed aggravated menacing, and his conviction is not based on insufficient evidence. Further, this is not a case of conflicting evidence where the jury clearly lost its way such that his conviction is against the manifest weight of the evidence.

{¶ 36} Turning to his conviction for intimidation of a witness, R.C. 2921.04(A) provides that "[n]o person shall knowingly attempt to intimidate or hinder the victim of a crime or delinquent act in the filing or prosecution of criminal charges . . . and no person shall knowingly attempt to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act."

{¶ 37} When viewed in a light most favorable to the prosecution, the facts in this case demonstrate that Collins and D.H. were friends. D.H. became involved in an incident with K.K. that led to a criminal complaint being filed against him. Collins and D.H. discussed the events that led to the criminal complaint. Collins then appeared in D.H.'s neighborhood and followed K.K., recording her. When she retreated to her van and called the police, he announced to his audience that he was filming her because she liked to film her customers, insinuating that she was a bad person. Indeed, most of his comments and stated purposes from his video demonstrate that his actions were in response to her situation with D.H. When considering all of the facts and circumstances, a rational juror could conclude that Collins' attitude and conduct exhibited a knowing

13.

intent to harass and intimidate K.K., and that Collins knew K.K. was a witness against D.H. Thus, his conviction is not based on insufficient evidence, nor is it against the manifest weight of the evidence.

{¶ 38} More than focusing on the elements of the offenses for which he was convicted, Collins argues that this case implicates the First Amendment. He suggests that he had a constitutional right to record K.K., a public official, in the performance of carrying out her official duties. Necessarily, Collins' alleged right is only relevant if it renders the aggravated menacing and intimidation of a witness statutes unconstitutional as applied to him. He, however, does not make this argument on appeal.

{¶ 39} Moreover, even if he did, "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Quarterman*, 2014-Ohio-4034, ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122 (1986). Because Collins did not raise or argue any First Amendment issues in the trial court, he has forfeited his constitutional challenge. *Id.*, citing *United States v. Olano*, 507 U.S. 725, 733 (1993). Thus, this court will not address any First Amendment implications in this case.

{¶ 40} Accordingly, because his convictions were not based on insufficient evidence or against the manifest weight of the evidence, Collins' second assignment of error is not well-taken.

14.

## IV. Conclusion

{¶ 41} For the foregoing reasons, the judgment of the Toledo Municipal Court is affirmed.  Collins is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Myron C. Duhart, J.

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.