[Cite as *State v. Stratton*, 2025-Ohio-1621.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                              Court of Appeals No.  S-24-007

    Appellee                                          Trial Court No.  23 CR 594

v.

Leroy Stratton                                        **DECISION AND JUDGMENT**

    Appellant                                        Decided:  May 6, 2025

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Following a jury trial, defendant-appellant, Leroy A. Stratton, Jr., appeals the

March 12, 2024 judgment of the Sandusky Court of Common Pleas, convicting him of

rape and sentencing him to a term of life in prison without the possibility of parole.  For

the following reasons, we reverse.

## I. Background

{¶ 2} The facts of this case are disturbing but need not be described in great detail. Summarized simply, Stratton was charged with raping his 18-month-old son, a violation of R.C. 2907.02(A)(1)(b) and (B). The matter came to the attention of law enforcement when a video of the abuse was livestreamed on the dark web and discovered by the FBI. The FBI referred the investigation to the Fremont Police Department, and Detective Christian Ortolani, who testified at trial and served as the State's representative at counsel's table, "handled [the] investigation."

{¶ 3} Six days before trial, Stratton appeared before Judge Jon Ickes, prepared to accept a plea agreement. Stratton had a lot of questions about his potential sentence and was weighing the risks and benefits of being sentenced following entry of a plea versus being sentenced following trial. Judge Ickes advised him at length about the various factors he would be considering when imposing a sentence. The plea hearing was continued to the next day so that the paperwork could be prepared.

{¶ 4} The next day, Stratton appeared for the plea hearing, but decided against entering a plea. Counsel explained that Stratton had been "hearing a lot of stuff" and given "the way [Judge Ickes] described the various possibilities [he] would be analyzing" in determining Stratton's sentence, Stratton became "afraid" that because "Detective Ortolani is [Judge Ickes's] stepson," "he would not get a fair decision." Judge Ickes inquired of Stratton:

> The Court: Mr. Stratton, have I – have I ever disclosed the relationship I have with Detective Ortolani to you before?

2.

[Stratton]: No, sir.

The Court: At no court proceeding or anything?

[Stratton]: No, sir.

The Court: Okay. So you're—you're now—you brought this up, which is, essentially, asserting a conflict in the case. Right?

[Stratton]: Yes, sir.

Significantly, Detective Ortolani had been disclosed as a witness six months earlier.

{¶ 5} Stratton moved the court to recuse itself. Judge Ickes acknowledged that he had "had to deal with this issue previously," and quickly focused in on the applicable rule, Jud.Cond.R. 2.11(A)(2)(d). Jud.Cond.R. 2.11(A)(2)(d) provides that "[a] judge shall disqualify himself . . . in any proceeding in which the judge's *impartiality* might reasonably be questioned, including" where "[t]he judge *knows* that the judge, the judge's spouse or *domestic partner*, or a person within the *third degree of relationship* to either of them . . . is . . . [l]ikely to be a material witness in the proceeding." (Emphasis in original.) Judge Ickes acknowledged that Detective Ortolani, his stepson, would be a person within the third degree of relationship and identified that the pivotal issue was whether Detective Ortolani was a "material witness."

{¶ 6} Despite the fact that Detective Ortolani "handled [the] investigation," "shepherded the case through the steps," and would be sitting at counsel table, the State's position was that he was not a "material witness." The State maintained that if Detective Ortolani fell ill before trial, it would not seek a continuance because it could proceed with

3.

its other witnesses, however, it conceded that if the court told the State that Detective Ortolani could not sit at counsel table, "the State would object to that" because "he was the investigating officer" and the State has "a right to designate one officer there that [it] can inquire from if [it has] questions."

{¶ 7} Judge Ickes stated his "opinion" that a "material witness is someone whose statements or potential testimony would be critical to the fact finder to make its decision, and, in this case, with a jury trial, the fact finder would . . . be the jury." He took the matter under advisement, but filed a written decision denying the motion later that morning at 11:20 a.m. on February 22, 2024.

{¶ 8} Judge Ickes cited, in part, Black's Dictionary's definition of "material witness": "A witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters[.]" (He did not cite the next clause of the definition: "a person who is capable of testifying in some relevant way in a legal proceeding." Black's Law Dictionary (12th ed. 2024).) Apparently finding that Detective Ortolani did not meet this definition, Judge Ickes concluded that the Ohio Judicial Rules did not require his disqualification. He found that his impartiality could not "reasonably be questioned" here. Following the adverse decision on his motion for recusal, Stratton did not file an Affidavit of Disqualification with the Ohio Supreme Court under R.C. 2701.03 and S.Ct.Prac.R. 21.

{¶ 9} The matter proceeded to trial. The State called four witnesses, including Detective Ortolani. Detective Sergeant Dustin Nowak described that Detective Ortolani

4.

was the primary investigator whose role was to "present the case to court, put the court pack together, type the narrative, tell everybody else what he needs accomplished," and "prepar[e] the search warrants." Other detectives "assist[ed] him." The State published the child sexual abuse material ("CSAM") during Detective Ortolani's testimony and authenticated numerous exhibits through him, including photographs, the search warrant, and the return of search warrant.

{¶ 10} The jury convicted Stratton. The trial court sentenced him to life in prison without the possibility of parole. Stratton appealed, assigning the following errors for our review:

I.      The failure of Appellant's trial counsel to request a second opinion or follow-up evaluation, with regard to the affirmative defense of insanity, constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

II.     The trial court abused its discretion in admitting State's Exhibit 3 in its entirety, where the probative value of the material contained on the video, aside from the portion of the video purporting to depict the alleged act by Appellant, was substantially outweighed by the danger of unfair prejudice, in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

III.    The failure of Appellant's trial counsel to file an Affidavit of Disqualification, pursuant to R.C. 2701.03 and R.C. 2701.031, of the trial court judge, or to request a continuance of the trial to allow him to file said Affidavit of Disqualification, constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

5.

IV.     Appellant's conviction was not supported by sufficient evidence.

V.      Appellant's conviction was against the manifest weight of the evidence.

{¶ 11} After oral argument, this court asked the parties to brief the following issue:

> Was the trial judge's refusal to recuse and disqualify himself based upon the involvement of the trial judge's stepson, Detective Christopher Christian Ortoloni (sic), reversible error pursuant to this court's decision in *State v. Elkins*, 2024-Ohio-5351 (6th Dist.)?

## II.  Law and Analysis

{¶ 12} In his third assignment of error, Stratton argues that he received ineffective assistance of counsel because trial counsel failed to file an Affidavit of Disqualification. We expanded the breadth of our review of this issue by asking the parties to brief whether reversal was required under our decision in *Elkins*, 2024-Ohio-5351 (6th Dist.), which we issued on November 8, 2024, almost nine months after Stratton's trial. The Ohio Supreme Court has acknowledged that a court of appeals may pass upon an error that was not assigned by an appellant, but the parties should be given an opportunity to brief the issue. *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170 (1988). The parties were provided that opportunity in this case.

### A.  *Elkins*

{¶ 13} In *Elkins,* Elkins was tried to a jury on one count of felonious assault. Judge Ickes presided, and Detective Ortolani testified. The jury convicted and Elkins appealed to this court.

6.

{¶ 14} After sentencing, Elkins learned of Judge Ickes's relationship to Detective Ortolani. He asked this court to allow him to supplement the record with filings in another criminal case that was pending against him where Judge Ickes was the assigned judge. In that case, Elkins—now aware of the familial relationship between Judge Ickes and Detective Ortolani—filed a motion for recusal given Detective Ortolani's role as lead detective. Judge Ickes granted the motion and recused himself.

{¶ 15} In the appeal that was before this court, Elkins alleged that because of Judge Ickes's relationship to Detective Ortolani, the trial judge erred in not disqualifying himself without seeking a waiver of the conflict. Elkins pointed out that Judge Ickes did agree to recuse himself once Elkins became aware of the relationship and sought recusal in his other case.

{¶ 16} The State responded that we lacked jurisdiction to consider the issue because exclusive jurisdiction to consider disqualification matters is vested in the chief justice of the Ohio Supreme Court. It argued that Elkins could not complain about judicial bias when he did not file an Affidavit of Disqualification. The State also claimed that even if a conflict existed, the conflict did not prejudice Elkins because it was a jury trial and Detective Ortolani was not a "material witness." It maintained that Elkins cited to nothing in the record demonstrating the appearance of unfairness.

{¶ 17} Elkins conceded that a court of appeals generally cannot reverse a trial court's judgment based on the court's refusal to recuse, but he claimed that we could

7.

address allegations that his due process rights were violated. Elkins also asserted that actual prejudice is not necessary–the *appearance* of unfairness is sufficient.

{¶ 18} We acknowledged that "generally 'only the Chief Justice or [the Chief Justice's] designee may hear disqualification matters,' and therefore, a 'Court of Appeals [is] without authority to pass upon disqualification or to void the judgment of the trial court upon that basis.'" *Elkins* at ¶ 11, quoting *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442 (1978). But we found that "'a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.'" *Id.,* quoting *State v. Dean*, 2010-Ohio-5070, ¶ 48, quoting *State v. LaMar*, 2002-Ohio-2128, ¶ 34. Thus, we "'may still review the issue of judicial bias as a grounds for reversal on appeal.'" *Id.,* quoting *State v. McCain*, 2015-Ohio-449, ¶ 14 (2d Dist.). We acknowledged that we must presume that a judge is unbiased and unprejudiced, but "[i]f the record shows judicial bias, the remedy is a new trial." *Id.,* citing *Dean* at ¶ 2.

{¶ 19} We observed that judicial bias has been interpreted to mean "'a deep-seated favoritism or antagonism that makes fair judgment impossible.'" *Id.* at ¶ 12, quoting *Jackson v. Cool*, 111 F.4th 689, 696 (6th Cir. 2024), quoting *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013). We explained that in assessing the risk of judicial bias, we apply an objective standard and not a subjective one, and recusal is required when "the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable." (Internal quotations omitted.) *Id.,* quoting *Jackson* at *id.,* quoting *Coley* at *id.* To that end, we recognized that the question is not whether the judge is *actually* biased,

8.

but whether "the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." (Internal quotations omitted and citations omitted from original.) *Id.,* quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872, 881 (2009).

{¶ 20} In *Elkins,* without evidentiary support, the State maintained that it was well known within the local bar association that Detective Ortolani is Judge Ickes's stepson, and trial counsel was aware of the relationship. We noted, however, that there was no evidence in the record that Elkins or his attorney knew of the relationship. And because of this fact, we found that Elkins's failure to file an Affidavit of Disqualification was not dispositive because Elkins could not be expected to file an Affidavit of Disqualification regarding a relationship about which he was unaware. We also found it significant that Judge Ickes recused himself in another case against Elkins. We concluded that there was "an unconstitutional potential for bias, where, as here, the judge's family member is a testifying officer and the judge does not inform the parties of the relationship during the pendency of the trial court case so that the issue of bias can be addressed." *Id.* at ¶ 14.

{¶ 21} In the present case, Stratton learned of Judge Ickes's relationship to Detective Ortolani before trial. In fact, Stratton was so uncomfortable with this that despite a recorded confession and explicit video evidence of him committing the offense, he opted to go to trial where there was a *chance* of acquittal rather than entering a plea and facing the *certain* result of being sentenced by the stepfather of the lead detective.

9.

{¶ 22} Unlike *Elkins*, Stratton's knowledge of the relationship enabled him to file an Affidavit of Qualification, which he did not do here. Significantly, however, R.C. 2701.03(B) and S.Ct.Prac.R. 21.01(D)(5) require that an Affidavit of Disqualification be filed in the Ohio Supreme Court within seven days of the next scheduled proceeding. The record indicates that the earliest that Stratton could have filed the affidavit was five days before trial—after the deadline for doing so. Thus, we find that the present case is only minimally distinguishable from *Elkins* due to Judge Ickes's failure to disclose the relationship in time for Stratton to timely file an Affidavit of Disqualification.

{¶ 23} While it has been properly recognized here that we cannot review the denial of a motion to recuse, *State ex rel. Hough v. Saffold,* 2012-Ohio-28, ¶ 2, we *can* review for judicial bias that affected a litigant's due-process rights. See *Elkins*, generally; *Matter of C.S.,* 2023-Ohio-3754, ¶ 24 (4th Dist.). But before addressing bias, we very quickly address the doubtful contention by the State—and the equally doubtful conclusion reached by Judge Ickes—that Detective Ortolani was not a material witness. Detective Ortolani testified that he "handled [the] investigation," the State described that he "shepherded the case through the steps," and the State indicated that it would object if the court were to rule that Detective Ortolani could not sit at counsel's table because "he was the investigating officer" and it may need to use him as a resource if questions arose during trial. Detective Ortolani was also the witness through whom the State published the CSAM and authenticated other important exhibits. As referenced above, Black's

10.

defines "material witness" as follows:

> A witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters; a person who is capable of testifying in some relevant way in a legal proceeding. Black's Law Dictionary (12th ed. 2024).

We easily conclude that Detective Ortolani was a "material witness." This finding is, of course, important to our judicial-bias review.

{¶ 24} Here, under the unique circumstances of this case, and under the authority of *Elkins*, we find that Judge Ickes's participation in this case presented an unconstitutional potential for bias. As we observed in *Elkins,* Judge Ickes recused himself in at least one other case where his stepson was the lead detective, which we deem to be an acknowledgment by Judge Ickes of the unconstitutional potential for bias. Given that Detective Ortolani's role was also as a lead detective here, we see no reason that Judge Ickes would have recused himself in Elkins's case, but not in Stratton's. And this court has already deemed that absent a waiver of conflict, there is an unconstitutional potential for bias for Judge Ickes to sit as a trial judge in cases where Detective Ortolani has served as a lead detective. Moreover, Judge Ickes's failure to disclose the relationship earlier prevented the timely filing of an Affidavit of Disqualification. Employing an objective standard, we conclude that the probability of actual bias here was too high to be constitutionally tolerable, and it was a violation of Stratton's due-process rights for Judge Ickes to preside over Stratton's case given the role of Judge Ickes's stepson. We stress that this case presents a unique situation and is limited to its facts.

11.

{¶ 25} Accordingly, we find that based upon the involvement of his stepson—and consistent with *Elkins*—Judge Ickes's participation in this case presented too high a probability of actual bias to be constitutionally tolerable and constituted reversible error. Our conclusion here renders moot all but one of Stratton's remaining assignments of error: his fourth assignment of error concerning the sufficiency of the evidence. "An assignment of error going to the sufficiency of the evidence supporting a criminal count is always potentially dispositive of that count" because the Double Jeopardy Clause bars the state from retrying the defendant when a conviction is reversed on sufficiency grounds. *State v. Gideon*, 2020-Ohio-6961, ¶ 27, citing *State v. Mathis*, 2020-Ohio-3068, ¶ 78 (6th Dist.); *Girard v. Giordano*, 2018-Ohio-5024, ¶ 10.

## B. Sufficiency

{¶ 26} In his fourth assignment of error, Stratton argues that the State failed to prove that he performed the act of fellatio "for the purpose of sexual gratification." Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the

12.

evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

{¶ 27} Under R.C. 2907.02(A)(1)(b), "[n]o person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" is defined to include fellatio. R.C. 2907.01(A). "Fellatio" is not defined in the Revised Code, however, consistent with Ohio Supreme Court case law, the jury instruction provided by the court defined it as "the practice of obtaining sexual satisfaction by oral stimulation of the penis." *See In re M.D.,* 38 Ohio St.3d 149, 152 (1988).

{¶ 28} Here, the CSAM at issue was played for the jury. This was sufficient evidence from which the jury could conclude that Stratton obtained sexual satisfaction. Ultimately, this was a question of fact for the jury. Accordingly, we find Stratton's fourth assignment of error not well-taken.

### III.  Conclusion

{¶ 29} Given his stepson's role as lead detective, Judge Ickes's participation in Stratton's case violated Stratton's due-process rights because of the constitutionally intolerable probability of actual bias. Consistent with *Elkins*, this constituted reversible error.

{¶ 30} The CSAM played for the jury was sufficient evidence from which the jury could find "sexual satisfaction." Stratton's fourth assignment of error is not well-taken.

13.

**{¶ 31}** Stratton's remaining assignments of error are denied as moot.

**{¶ 32}** We reverse the March 12, 2024 judgment of the Sandusky Court of Common Pleas and remand to the trial court for further proceedings. The State is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.       _____
<br>                  JUDGE

Gene A. Zmuda, J.

                _____

Charles E. Sulek, P.J.       JUDGE
<br>CONCUR.

                _____

                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.