[Cite as *State v. Hall*, 2026-Ohio-2020.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania          Court of Appeals No. L-25-00131

      Appellee

                                  Trial Court No. TRD-24-05565

v.

Donald Hall                             **DECISION AND JUDGMENT**

      Appellant                Decided: May 29, 2026

* * * * *

Heather Pentycofe, Sylvania Chief Prosecuting Attorney, for appellee.

Donald Hall, Pro Se Appellant.

* * * * *

**OSOWIK, P.J.**

{¶ 1} Appellant, Donald Hall, appeals the judgment of the Sylvania Municipal Court, following a bench trial, which found him guilty of speeding. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and Facts**

{¶ 2} In the early morning hours of November 28, 2024, Hall was cited for speeding on Airport Highway in Springfield Township, Ohio. The citing officer, Lucas County Sheriff's Deputy Abib Howard, clocked Hall traveling at 84 miles per hour in a 55-mile-per-hour zone.

{¶ 3} Hall pleaded not guilty and requested a trial. The trial was scheduled to be held on January 27, 2025, before the magistrate. On that date, the magistrate informed Hall that he had the right for the case to be heard by the elected judge. Hall chose to exercise that right. Also at that hearing, Hall told the magistrate that he was still waiting to receive Howard's training records as well as maintenance and calibration records for the radar device. Hall was informed that he would have to request those records from the sheriff's office.

{¶ 4} On February 28, 2025, the matter was before Judge Bonfiglio for trial. The State called Howard as its witness. Prior to cross-examination, the trial court disclosed to Hall that Howard sometimes works as security for the court. Judge Bonfiglio offered to recuse himself and have a visiting judge appointed, which Hall accepted.

{¶ 5} Hall then mentioned to the court that he had submitted public records requests to the sheriff's office for calibration records for the radar device and tuning forks and for training certification records for Howard, but had not received them. Judge Bonfiglio responded that he was not going to address Hall's concern because he was recusing himself. He informed Hall that "[a]ny Discovery Requests you have to make that request of the Prosecutor." Hall replied that at the last hearing he raised the issue and

2.

was told he needed to submit public records requests, which he did. At the end of the hearing, Hall asked the State if it had any other discovery than what had already been provided to him, and the State responded that it did not.

{¶ 6} Following the February 28, 2025 hearing, the trial court entered a judgment in which it stated,

> Court disclosed that [arresting officer] is a contract worker as court security. Defendant asked that Judge recuse himself and that an acting Judge be appointed. Defendant's request is granted. Court will contact Supreme Court and obtain an acting Judge. TTC 3/14/25 @ 8AM. *State to comply with defendant's discovery request for calibration and officer records requested by defendant.* Clerk to notify both parties.

(Emphasis added.)

{¶ 7} The matter was then continued to a trial before Visiting Judge Keller on May 7, 2025. When it was Hall's time to give an opening statement, he moved to dismiss the case, arguing that he had not received the requested information about Howard's training and the calibration of the radar. The trial court inquired into when and how Hall asked for the information, and Hall recounted his attempts at public records requests through the sheriff's office. When asked for a response, the State noted that it had never been served with a discovery request, and it had never seen what Hall submitted to the sheriff's office. Hall retorted that Judge Bonfiglio had made an entry stating that the State was to get the records for him. The State responded that it did not know anything about that entry, and it has never been provided with a list or anything in writing to be able to identify exactly what Hall was seeking. Ultimately, Hall confirmed that he had not

3.

served the prosecutor with a written discovery request, and the trial court denied his motion to dismiss.

{¶ 8} The trial then commenced with the State calling Howard as its witness. Howard testified that at 1:17 a.m. on November 28, 2024, he was traveling along Airport Highway when he observed Hall's car traveling in the same direction and gaining distance quickly from him. Howard positioned his cruiser behind Hall's vehicle and used his radar to record him traveling at 84 miles per hour in a 55-mile-per-hour zone. He maintained the radar reading for five to ten seconds.

{¶ 9} Howard further explained that he had checked the calibration several hours earlier at 6:00 p.m. and 7:35 p.m. on November 27, 2024, and he also checked the calibration during his traffic stop of Hall. Each time, the radar appeared to be in proper working order. In addition, Howard testified that he was trained to use the radar device by Deputy Sheriff Bard, including on how to activate it, how to check the calibration, and how to work the remote. He noted that he has used that type of radar device since January 2019, and has issued over one hundred citations with it.

{¶ 10} The State then played Howard's body-worn camera and dash camera videos from the traffic stop. The videos show the moments before the traffic stop. In them, Hall's car does not appear to be gaining significant distance from Howard's cruiser. After Howard initiated the stop and returned to his cruiser with Hall's identification, a reading of "84" can be seen on the radar unit.

{¶ 11} On cross-examination, Hall inquired into Deputy Bard's qualifications as a Field Training Officer. When he asked for a moment to research Bard, the trial court

4.

took judicial notice of the fact that Bard had been trained as a trainer. In addition to asking about Bard's qualifications, Hall also questioned Howard on the accuracy of the radar device, and whether things such as the rain, radio signals, or the cruiser's defrost fan could interfere with its functioning. Howard testified that he checked the radar's calibration every time he used it. Finally, Hall reviewed the dash camera video and attempted to use a piece of paper to measure the size of his taillights to show that he was not pulling away from Howard's cruiser, but that Howard's cruiser was actually gaining on him. Hall posited that if Howard's speed was in the seventies as he testified, then it would not make sense that Howard would gain on him if he was going 84 miles per hour. Howard responded that in the video the road curved, which is when he closed the distance on Hall, and then Hall accelerated coming out of the curve, which is when Howard obtained the 84 miles-per-hour reading.

{¶ 12} Following Howard's testimony, the trial concluded without Hall providing any witnesses or evidence in his defense. The trial court then found Hall guilty of speeding and ordered him to pay a fine of $100 plus court costs.

### Assignments of Error

{¶ 13} Hall timely appeals his conviction, asserting five assignments of error for review:

1. The Court erred and abused its authority to take judicial notice of the training of the officer and his trainer.

2. The Court erred and abused its authority by basing appellate (sic) guilty verdict where the evidence was not sufficient for the state to prove guilt beyond a reasonable doubt.

3. The Court erred and abused it's (sic) authority to the prejudiced (sic) the defendant not moving to dismiss charges on grounds prosecution refusal to comply with the judge's order to disclose discovery of training of the officer and maintenance and calibration of device that was used.

4. The Court erred and abused it's (sic) authority, prejudiced the Appellate (sic) by not requiring state to prove the devices used was reliable and Deputy was qualified to operate it.

5. The Court Erred and Abused its Authority to the prejudice of the appellate (sic) by showing bias.

## Law and Analysis

{¶ 14} For ease of discussion, we will address Hall's assignments of error in the order they allegedly occurred.

## Third Assignment of Error:  Motion to Dismiss

{¶ 15} In his third assignment of error, Hall argues that the trial court abused its discretion when it denied his motion to dismiss that was premised upon the State's failure to comply with its discovery obligations.

{¶ 16} "'A trial court has broad discretion over discovery matters,'" and a trial court's ruling on a claimed discovery violation under Crim.R. 16 is reviewed for an abuse of discretion." *State v. Collins*, 2024-Ohio-5730, ¶ 23 (6th Dist.), quoting *State v. Harris*, 2023-Ohio-3994, ¶ 72 (10th Dist.), citing *State ex rel. Duncan v. Middlefield*, 2008-Ohio-6200, ¶ 27; *State v. Clark*, 2018-Ohio-521, ¶ 37 (6th Dist.).  An abuse of discretion connotes that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

6.

{¶ 17} At the outset, we note that any obligation of the State to provide the requested information about Howard's training and the calibration of the radar does not arise under Crim.R. 16(B).  That rule provides,

> Upon receipt of a written demand for discovery by the defendant, . . . the prosecuting attorney shall provide . . . the following items related to the particular case indictment, information, or complaint, and which are material to the preparation of a defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant, within the possession of, or reasonably available to the state, subject to the provisions of this rule:
>
> (1) Any written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant;
>
> (2) Criminal records of the defendant, a co-defendant, and the record of prior convictions that could be admissible under Rule 609 of the Ohio Rules of Evidence of a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal;
>
> (3) Subject to divisions (D)(4) and (E) of this rule, all laboratory or hospital reports, books, papers, documents, photographs, tangible objects, buildings, or places;
>
> (4) Subject to division (D)(4) and (E) of this rule, results of physical or mental examinations, experiments or scientific tests;
>
> (5) Any evidence favorable to the defendant and material to guilt or punishment;
>
> (6) All reports from peace officers, the Ohio State Highway Patrol, and federal law enforcement agents . . .;
>
> (7) Any written or recorded statement by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal.

7.

Crim.R. 16(B). Here, it is undisputed that Hall did not submit a written demand for discovery to the prosecutor. Further, information regarding Howard's training and the calibration of the radar does not fall under any of the categories listed in Crim.R. 16(B)(1)-(7).

{¶ 18} Instead, any obligation the State had arose under the trial court's February 28, 2025 entry that "State to comply with defendant's discovery request for calibration and officer records requested by defendant." This entry was made pursuant to the trial court's discretion under Crim.R. 16(L)(1), which provides that "[t]he trial court may make orders regulating discovery not inconsistent with this rule." The issue in this case is whether the trial court abused its discretion when it implicitly determined that the State did not violate the February 28, 2025 entry and denied Hall's motion to dismiss.

{¶ 19} Upon review, the trial court's decision is not unreasonable, arbitrary, or unconscionable. The entry required the State to comply with Hall's *discovery request*. Indeed, at the February 28, 2025 hearing, the trial court specifically informed Hall that "Any Discovery Requests you have to make that request of the Prosecutor," distinguishing discovery requests from his separate public records requests. Hall, however, never submitted a written demand for discovery to the prosecutor, which as the prosecutor recognized, made it impossible for the State to know exactly what documents Hall was seeking. Therefore, because Hall never properly submitted a discovery request, the State did not violate its discovery obligations, and the trial court did not abuse its discretion in denying his motion to dismiss.

{¶ 20} Accordingly, Hall's third assignment of error is not well-taken.

8.

**First Assignment of Error: Judicial Notice**

{¶ 21} In his first assignment of error, Hall argues the trial court abused its discretion when it took judicial notice of Howard's and Bard's training. Importantly, the record reflects that the trial court only took judicial notice that Bard has been "trained as a, as a trainer of [Howard];" Howard's training was established by his own testimony. We will, therefore, limit our analysis to Bard's training.

{¶ 22} Evid.R. 201(B) and (C) provides that a trial court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "Decisions concerning judicial notice are generally reviewed under an abuse of discretion standard." *Columbia Gas of Ohio, Inc. v. Toledo Edison Co.*, 2015-Ohio-3942, ¶ 21 (6th Dist.); *State ex rel. Harris v. Bruns*, 2023-Ohio-2344, ¶ 21.

{¶ 23} Hall maintains that the trial court erred because it could not have possibly known the training records for Bard. While the trial court likely could not have known the specific details of Bard's training, we do not find it unreasonable or arbitrary for the trial court to conclude that it would be generally known and not subject to reasonable dispute that a Field Training Officer in the sheriff's department would himself have been trained.

{¶ 24} Accordingly, the trial court did not abuse its discretion when it took judicial notice that Bard was trained as a trainer. Hall's first assignment of error is not well-taken.

9.

**Fourth Assignment of Error:  Reliability of the Radar**

{¶ 25} In his fourth assignment of error, Hall contends the trial court erred when it did not require the State to prove that the radar device was reliable and that Howard was qualified to operate it.

{¶ 26} It is settled that "the results of a laser speed-measuring device are admissible in Ohio courts without expert testimony establishing their reliability or the court taking judicial notice of the scientific principles underlying that technology."  *City of Brook Park v. Rodojev*, 2020-Ohio-3253, ¶ 17.  The fact-finder, however, must still "determine whether the evidence presented concerning the accuracy of the device and the qualifications of the person who used it is sufficient to support a conviction based on the device's results."  *Id.* at ¶ 13.  To that end, an officer's testimony "[is] sufficient to establish that the radar device was in good working order and that he was qualified to operate it."  *State v. Leonatti*, 2015-Ohio-1172, ¶ 10 (5th Dist.), quoting *State v. Maher*, 1995 WL 553262, *1 (9th Dist. Sept. 20, 1995).

{¶ 27} In *Leonatti*, as here, the defendant challenged "the testimony of the ticketing officer as to his qualifications and his certification to operate and testify about the results of the [radar] device used to determine speed."  *Id.* at ¶ 7.  The Fifth District held that the officer's testimony was "legally sufficient and credible" where the officer testified that he was trained and certified in the use of electronic speed-measuring devices, that he recertifies annually, that he checked the accuracy of his device on the day of the infraction, that he performed a scope alignment test, that he ran an internal check of the internal mechanics, that he checked that the display was working properly, and that

10.

he checked the calibration the following day and it was still working properly. *Id.* at ¶ 9, 12-13.

{¶ 28} Here, similarly, Howard testified that he was trained in the use of the radar device and his training officer approved his ability to activate it, to check the calibration, and to operate the remote. He also testified that he checked the calibration of the radar device at the beginning of his shift, during the traffic stop, and again afterward, with the results that it was properly calibrated. Finally, he testified that he has used that type of radar device for over five years and has issued over 100 traffic citations with it. We hold that this testimony is sufficient to establish that the radar device was reliable and that Howard was qualified to operate it. *See also State v. Bayus*, 2006-Ohio-1684, ¶ 19 (11th Dist.) ("The testimony of the officer who calibrated the radar device prior to its use is sufficient to demonstrate that a radar unit is properly calibrated. . . . [And] the officer's testimony with respect to his or her qualifications and experience, is sufficient to establish that he or she is qualified to use the radar device.").

{¶ 29} Accordingly, Hall's fourth assignment of error is not well-taken.

**Second Assignment of Error: Sufficiency of the Evidence**

{¶ 30} In his second assignment of error, Hall argues that his conviction is based on insufficient evidence.

{¶ 31} When reviewing the sufficiency of the evidence, the relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

11.

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} Hall maintains that the State's only evidence was the dash camera video, the body-worn camera video, and Howard's testimony, and that this evidence was insufficient to establish that he was traveling 84 miles per hour in a 55 mile-per-hour zone. To the contrary, the video evidence and Howard's testimony that he clocked Hall going 84 miles per hour is sufficient to support Hall's conviction for speeding. *See Bayus* at ¶ 8 ("The state presented its case, through Trooper Jeffries' testimony, establishing that appellant violated R.C. 4511.21(C) beyond a reasonable doubt.").

{¶ 33} Accordingly, Hall's second assignment of error is not well-taken.

### Fifth Assignment of Error: Judicial Bias

{¶ 34} Finally, in his fifth assignment of error, Hall argues that the trial court erred and displayed bias when it took judicial notice of Bard's training, relied only on Howard's word, did not require the State to produce documentation of the radar device's calibration and Howard's qualification to use it, and did not accept his demonstration that the dash camera video showed Howard's cruiser gaining ground on Hall's vehicle.

{¶ 35} This court has recognized that we can "review for judicial bias that affected a litigant's due-process rights." *State v. Keegan Ents., Ltd.*, 2026-Ohio-961, ¶ 26 (6th Dist.), quoting *State v. Stratton*, 2025-Ohio-1621, ¶ 23 (6th Dist.). "Trial judges are 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.'" *Id.* at ¶ 28, quoting *Preston v. Shutway*, 2013-Ohio-185, ¶ 16 (2d Dist.), quoting *Weiner v. Kwiat*, 2003-Ohio-3409, ¶ 12.

89-90 (2d Dist.).  "Judicial bias sufficient to implicate a litigant's due-process rights requires 'a deep-seated favoritism or antagonism that makes fair judgment impossible." *Id.*, quoting *State v. Elkins*, 2024-Ohio-5351, ¶ 12 (6th Dist.), quoting *Jackson v. Cool*, 111 F.4th 689, 696 (6th Cir. 2024).

**{¶ 36}** In this case, notwithstanding Hall's protestations otherwise, the record does not reveal any judicial bias.  The trial court performed its roles as the gatekeeper of the evidence and as the fact finder and found Howard's testimony sufficiently credible to establish beyond a reasonable doubt that Hall was speeding.  As discussed above, the trial court did not err in performing its duties and in reaching its conclusion.  "[A]n adverse ruling, without more, is not evidence that a judge is biased or prejudiced."  *In re Disqualification of Capizzi*, 2018-Ohio-5256, ¶ 4.

**{¶ 37}** Accordingly, Hall's fifth assignment of error is not well-taken.

### Conclusion

**{¶ 38}** For the foregoing reasons, the judgment of the Sylvania Municipal Court is affirmed.  Hall is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| Thomas J. Osowik, P.J. | |
|---|---|
| | JUDGE |

| Christine E. Mayle, J. | |
|---|---|
| CONCUR. | JUDGE |

| Gene A. Zmuda, J. | |
|---|---|
| CONCUR AND WRITES SEPARATELY. | JUDGE |

**ZMUDA, J.**

{¶ 39} I concur with the majority affirming the trial court's judgment. However, I write separately because I would find appellant's third assignment of error not well-taken for a different reason. Contrary to the majority's conclusion, I would find that the State did not comply with the trial court's discovery order, but I would also conclude that the trial court did not abuse its discretion in denying appellant's motion to dismiss.

{¶ 40} Although Crim.R. 16(B) requires the State to provide discovery to a defendant upon receipt of a written demand, Crim.R. 16(L)(1) permits a trial court to "make orders regulating discovery not inconsistent with this rule." As the majority concludes, the trial court's order in this case was made pursuant to Crim.R. 16(L)(1). The order provides, "State to comply with defendant's discovery request for calibration and officer records *requested by defendant*." (Emphasis added.) The order's plain language, therefore, states that the records had already been requested by appellant. It does not provide, as the majority concludes, that the State was only required to respond to appellant's request if appellant later made his request in writing. Indeed, the trial court would not need to exercise its authority under Crim.R. 16(L)(1) to issue an order

14.

requiring the State to respond to a possible future written discovery request because Crim.R. 16(B) already required the State to do so.

{¶ 41} Moreover, nothing in Crim.R. 16(B) is inconsistent with the trial court ordering the State to respond to a specific discovery request made by a pro se defendant before the court on the record. Instead, "[t]he overall objective of the criminal rules ' is to remove the element of gamesmanship from a trial.' " *State v. Darmond*, 2013-Ohio-966, ¶ 19, quoting *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 (1987), quoting *State v. Howard*, 56 Ohio St.2d 328, 333 (1978). "The purpose of the discovery rules 'is to prevent surprise and the secreting of evidence favorable to one party.' " *Id.*, quoting *Lakewood* at 511. Here, before the trial court and on the record, appellant specifically identified the records he was seeking and detailed the methods that he had used in his attempts to obtain the records. Although the trial court did explain to him that he should have made his requests in writing and delivered them to the prosecutor, the trial court then issued an order requiring the State to respond to the request. The State's failure to comply with an order requiring it to produce specific records because appellant himself did not deliver a subsequent written discovery request can only be characterized as gamesmanship. Indeed, the State's stated reason for not complying helps illustrate that fact. At the May 7, 2025 trial date, when appellant moved to dismiss based on the trial court's order requiring the State to respond to his discovery request, the trial court asked the prosecutor whether she knew anything about the order. She replied, "I do not," and pointed to the absence of a written discovery request to explain why she had not

15.

produced the records. Accordingly, contrary to the conclusion of the majority, I would find that the State violated the trial court's discovery order.

{¶ 42} However, I also would conclude that the trial court did not abuse its discretion in denying appellant's motion to dismiss. "[A] trial court has discretion in determining a sanction for a discovery violation" made by the State. *Darmond* at ¶ 33, citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). We therefore review a trial court's order regarding discovery sanctions for an abuse of discretion, and abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Lathan*, 2024-Ohio-2514, ¶ 66 (6th Dist.), citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996). "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *Darmond* at ¶ 33, citing *State v. Morris*, 2012-Ohio-2407, ¶ 14.

{¶ 43} "[T]hree factors … govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution[:] …. (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *Darmond* at ¶ 35, quoting *Parson*, 6 Ohio St.3d 442, syllabus. A range of sanctions is available under Crim.R. 16, and a trial court is required to impose the least severe sanction that would accomplish the purposes of the discovery rules. *Id*. at ¶ 38. Dismissal with prejudice is the most extreme sanction, and a trial court abuses its discretion if it dismisses a case when a less extreme

16.

sanction would accomplish the purposes of the discovery rules.  *See Toledo v. Drake*, 2015-Ohio-5497, ¶ 10 (6th Dist.).

{¶ 44} Here, appellant moved to dismiss—the most extreme sanction—due to the State's failure to comply with the trial court's discovery order.  Applying the *Parson* factors, at least two of those factors weigh against such a severe sanction.  Notably, the arresting officer provided significant testimony about his training and the calibration of the radar device at the February 28, 2025 hearing, before the first trial judge recused himself.  Appellant's trial did not occur until more than two months later, on May 7, 2025.  Appellant, therefore, had foreknowledge of many details regarding the officer's training and the calibration of the radar device.  Next, appellant has not demonstrated that he was prejudiced by the failure of the State to provide the requested records.  Again, both at the May trial and the February hearing, the arresting officer testified at length regarding his training and how he calibrated the radar device, and appellant was able to cross-examine the arresting officer on those subjects.  There is no indication that even if appellant had received the training and calibration records that the trial's outcome would have been any different.  Applying the *Parson* factors to this case, I would find that the trial court did not abuse its discretion in denying appellant's motion to dismiss.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.